**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)   Case No. 10-20093-CM<br>)<br>SCOTT R. FONSECA,  )<br>)<br>Defendant.  )<br>_____ ) | |

**MEMORANDUM AND ORDER**

In June 2012, a jury convicted defendant of possessing, concealing, or storing stolen firearms in violation of 18 U.S.C. §§ 922(j), 924(a)(2), and 2. Defendant now claims that the court should enter a judgment of acquittal because there was insufficient evidence to support the jury's verdict. Alternatively, defendant asks the court to grant him a new trial because (1) the verdict is contrary to the weight of the evidence; (2) the court erroneously denied defendant's motions to suppress statements and evidence; (3) the jury instruction on aiding and abetting was improper; and (4) the constructive possession instruction was not supported by the evidence and was contrary to the government's theory of the case.

**I. Motion for Judgment of Acquittal**

The court first takes up defendant's request for a judgment of acquittal.

**a. Legal Standard**

In reviewing a motion for judgment of acquittal, the court views the evidence in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999). The court must grant a motion for judgment of acquittal when the evidence is insufficient to sustain a

conviction. Fed. R. Crim. P. 29(a). On the other hand, the court must uphold the jury's guilty verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (citation and quotation marks omitted) (emphasis in original). "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (citation and quotation marks omitted). The court considers both direct and circumstantial evidence, as well as reasonable inferences that can be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993). An inference is "reasonable" only if "logical and probabilistic reasoning" can lead to the conclusion. *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (citation omitted). The court does not examine the evidence in "bits and pieces," but rather evaluates the sufficiency by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986) (citation omitted).

**b. Analysis**

Defendant contends that the government presented insufficient evidence to support the jury's finding that defendant "possessed, concealed, or stored stolen firearms." Specifically, defendant claims:

- There were two computer bags that were similar in color, size, and shape.
- One was carried by defendant as he walked; one was in Amanda White's vehicle.
- Ms. White testified that she picked up the bag originally carried by defendant and placed it in her vehicle, and that the guns were in that bag (as opposed to the bag already in her car).

- Ms. White's credibility was suspect and no rational jury could have relied upon her testimony.
- The only other testimony linking the bag containing the guns to defendant was the testimony of Officers Reynolds and Lewis. But their testimony was also unreliable and inconclusive.

Defendant's argument boils down to one of credibility. Unfortunately for defendant, however, reevaluation of witness credibility has no role in the court's review of a motion to acquit. *United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997). It is the jury's duty to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts. *United States v. Nieto*, 60 F.3d 1464, 1469 (10th Cir. 1995) (citation omitted). Moreover, "[c]redibility choices are resolved in favor of the jury's verdict. . . ." *United States v. Horn*, 946 F.2d 738, 740 (10th Cir. 1991) (citations omitted).

Viewing the testimony of Ms. White and the officers in the light most favorable to the government, the court concludes that the jury's verdict is supported by sufficient evidence. Ms. White may have exhibited some memory troubles, but her testimony was corroborated by the testimony of the officers. And her methamphetamine use does not mandate that her testimony be discounted. Moreover, Officer Lewis testified that he saw Ms. White pick up the bag and place it in the vehicle. While the evidence showed that the bags looked similar, the jury was entitled to weigh the evidence and draw inferences from the facts. Defendant essentially asks the court to weigh the witnesses' credibility and to draw its own inferences from the evidence. Neither of these actions is proper. Defendant is not entitled to a judgment of acquittal.

### II. Motion for a New Trial

The court next addresses defendant's request for a new trial.

#### a. Legal Standard

In considering a motion for new trial, the court has broad discretion that will not be disturbed on appeal absent plain abuse of that discretion. *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987). The standards for granting a new trial are not as strict as the standards for granting judgment of acquittal. Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial "if the interest of justice so requires." Additionally, any error which would require reversal on appeal is a sufficient basis for granting a new trial. *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (citation and quotation marks omitted). The court may weigh the evidence and assess witness credibility. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) (citation omitted). The court should grant a motion for a new trial if, "after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'" *United States v. Gabaldon*, 91 F.3d 91, 93–94 (10th Cir. 1996) (quoting *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994)). But courts disfavor new trials, *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969), and exercise great caution in granting them, *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). The burden of proving that a new trial is warranted rests on the defendant. *Walters*, 89 F. Supp. 2d at 1213 (citations omitted).

#### b. Weight of the Evidence

Defendant first claims that the verdict was against the weight of the evidence, incorporating his arguments made in support of his motion for an acquittal. For generally the same reasons identified above, the court finds that relief is not appropriate here. That said, the court recognizes a key

difference in the two requests for relief: in considering a motion for a new trial, the court may weigh the evidence and the witnesses' credibility. While defendant made efforts during trial to raise questions as to which bag defendant was carrying and attempted to paint Ms. White as the "mastermind," the court believes that the weight of the evidence did not support defendant's theory of the case. The testimony of both Ms. White and the officers was credible when recounting the series of events the night of defendant's arrest. They were consistent on the important points. Considering the evidence as a whole, the verdict was not "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Champion Home Builders v. Shumate*, 388 F.2d 806, 808 (10th Cir. 1967).

### c. Motions to Suppress

Defendant next contends that the court should have granted his motions to suppress before trial. On this point, the court stands by its earlier rulings and declines to reconsider them here.

Alternatively, defendant contends that the government's position during the hearings on the motions to suppress was inconsistent with its position at trial. Specifically, defendant points out that in response to the motions to suppress, the government argued that defendant had abandoned the bag and lacked standing to challenge the vehicle search. But at trial, the government contended that even if defendant did not have actual possession of the guns, he had constructive possession and/or joint possession of them.

The government's position at trial was not necessarily inconsistent with its earlier contentions. For defendant's argument to prevail, the court would have to consider only an isolated, discrete period of time: the moments surrounding the time defendant set the bag down and Ms. White placed it in the car. But the jury convicted defendant of possessing, concealing, or storing stolen firearms on or about June 1, 2010 (or aiding and abetting the crime). "On or about June 1, 2010" encompasses much more time than just the isolated period during which the bag was exchanged. At different points during the

"on or about June 1, 2010" time frame, defendant was in the car with Ms. White (and the bag of guns); out of the car without the bag; back in the car (with the bag); and again out of the car, but with a bag (which may or may not have contained the guns).  At any of these individual times, the jury could have reasonably found that defendant actually possessed the guns, constructively possessed the guns, jointly possessed the guns, or aided and abetted Ms. White in possessing, concealing, or storing the guns.  It is not inconsistent to find that defendant engaged in one activity at one time and another at an earlier or later time.

Finally, defendant contends that it is unclear whether the court ruled on the issue of whether Officer Reynolds had reasonable suspicion to detain defendant.  To the extent that the court has not ruled on the issue, defendant asks for a ruling now.

In the hearing on defendant's first motion to suppress, counsel specifically disavowed that he was challenging the propriety of the initial stop and defendant's continued detention.  In light of counsel's representation, the court did not explicitly rule on the record that Officer Reynolds had reasonable suspicion to stop and detain defendant.  Necessary to the court's decision not to suppress certain statements, however, was an implicit finding that the initial stop and detention was proper.  The court heard ample evidence on the circumstances of the stop and detention.  If the court had not implicitly found the stop and detention valid, the statements made by defendant (and expressly *not* suppressed by the court in the first hearing) would have been inadmissible based on the fruit of the poisonous tree doctrine.

Later, defendant filed a pro se motion to suppress.  (Doc. 51.)  In that motion, defendant asked the court to suppress evidence obtained as a result of "an unlawful stop of Defendant's car" and "an unlawful search of Defendant's car without consent." (*Id.* at 1.)  In defendant's memorandum in support of the motion, he states, "There was not reasonable suspicion to justify a[n] investigative stop

-6-

(Terry stop) on the defendant on the date of June 1, 2010." (Doc. 52 at 1.) The bulk of defendant's brief, however, discusses the propriety of the vehicle stop—not that of defendant on foot.

At the hearing on the motion to suppress, defendant began to address the validity of the stop (although it is unclear whether he intended to present evidence on the propriety of his own stop or the stop of the car). The government objected and asked the court to address defendant's standing first. The court did so. The court found that defendant lacked standing to challenge the stop of the car and did not further address reasonable suspicion. The court did, however, alternatively find that Officer Reynolds had probable cause to believe that contraband might be located in the car and that the bag was in plain view in the car.

In the second hearing, the court recalls telling defendant that the court had already found his detention to be lawful. Upon further consideration, this statement facially appears erroneous. The court does not believe that it ever issued a formal explicit ruling that defendant's own stop and detention was based on reasonable suspicion. As mentioned previously, however, this ruling was implicit in the court's findings. And it is arguable that the issue was never squarely before the court— at least after defense counsel advised the court that he was not pursuing this theory in the first suppression hearing.

Nevertheless, the court heard more than ample evidence in the two suppression hearings to determine that Officer Reynolds did, in fact, have reasonable suspicion to stop and detain defendant. The court analyzes investigative detentions under *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (citation omitted). The court determines the reasonableness of an investigative detention by considering (1) "whether the officer's action was justified at its inception," and (2) whether the scope was reasonably related to the circumstances which originally justified the stop. *Id.* (quoting *Terry*, 392 U.S. at 20). The length of the investigative

detention usually must be "no longer than necessary to effectuate the purpose of the stop," and the scope "must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500 (1983). An officer may lengthen the detention for further questioning beyond that related to the initial stop in two circumstances: (1) where he has an objectively reasonable and articulable suspicion of illegal activity, and (2) where the detention has become consensual. *Id.* (citation omitted).

In determining whether objectively reasonable suspicion existed, the court looks at the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). The court employs common sense and ordinary human experience, and defers to an officer's ability to distinguish between innocent and suspicious actions. *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997) (citations omitted). But reasonable suspicion cannot be based on inchoate suspicions or unparticularized hunches. *Id.* (citing *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994)).

In this case, the court considered Officer Reynolds's experience and training. *United States v. $49,000.00 in U.S. Currency, More or Less*, 208 F. App'x 651, 655–56 (10th Cir. 2006) (emphasizing the officer's experience and training). He testified that he had been a police officer for over eleven years, working both on patrol and in investigations. Officer Reynolds contacted defendant, who was walking alone, in a high crime area at 2:45 in the morning. The court realizes that presence in a high-crime area alone is not sufficient to provide reasonable suspicion. *United States v. Dennison*, 410 F.3d 1203, 1208 (10th Cir. 2005). But here, it was coupled with other factors. Defendant set down a bag he had been carrying and acted in a manner that caused Officer Reynolds concern. He was trying to leave the area; as Officer Reynolds testified, defendant was "pretty emphatic" about trying to get Ms. White to pick him up. Furtive movements and nervousness are relevant in evaluating reasonable suspicion. *United States v. DeJear*, 552 F.3d 1196, 1201 (2009). Based on the totality of the circumstances, the court earlier implicitly found (and now explicitly finds) that the initial stop was valid.

Officer Reynolds was also justified in continuing the detention. There are several pieces of evidence that, totaled together, caused Officer Reynolds to believe that he had reasonable suspicion to detain defendant. First, defendant was carrying a bag, set it down, and then the bag was picked up by Ms. White. Second, defendant's answers to Officer Reynolds's questions were sketchy and suspicious. Third, defendant's mannerisms and actions and the presence of Ms. White's car added to the suspiciousness of the situation. But even if some of these acts and facts may appear to be innocent in and of themselves, *see United States v. Arvizu*, 534 U.S. 266, 274 (2002), the court finds that they support the existence of reasonable suspicion when viewed in their totality and when giving due weight to Officer Reynolds's expertise. Officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 273. The court finds that the totality of the circumstances in this case overwhelmingly supported Officer Reynolds's reasonable suspicion that defendant was engaging in illegal activities. Defendant's stop and detention therefore did not violate the Fourth Amendment.

It appears that the court erroneously indicated that this issue had already been resolved on the record. This error does not, however, entitle defendant to a new trial. The record is clear that Officer Reynolds had reasonable suspicion to stop and detain defendant. The record is less clear that defendant properly raised this issue for consideration. In any event, defendant is not entitled to relief on this basis.

### d. Aiding and Abetting Instruction

At trial, defendant objected to the aiding and abetting instruction and the court overruled defendant's objection. Here, again, defendant claims that the testimony connecting defendant to the guns was unreliable. Defendant contends that, while there may have been evidence (although

unreliable) suggesting that Ms. White aided and abetted defendant in possessing the guns, the reverse is not true: no reasonable jury could find that defendant aided and abetted Ms. White in possessing the guns.

It was defendant's position at trial that Ms. White had the bag with the guns in her car. If the jury accepted defendant's theory, then the jury could still find defendant guilty of the crime charged by believing that Ms. White was the "mastermind," and that until defendant got out of the car and started walking, he aided and abetted Ms. White in possessing, concealing, or storing the stolen firearms. If this was the case, exiting the car did not undo defendant's prior participation in the crime. Certainly the weight of the evidence supported the government's primary theory—not defendant's. But sufficient evidence also existed to let the jury decide whether defendant aided and abetted Ms. White instead of actually possessing the guns himself. The court believes that the jury was properly instructed on the aiding and abetting theory.

### e. Constructive Possession Instruction

Finally, defendant claims that the jury instruction defining actual and constructive possession was erroneous. He argued at trial that the instruction was not supported by the evidence and was contrary to the government's theory of the case.

Defendant's arguments here are a basic rehashing of arguments already addressed within this Memorandum and Order. The government is not precluded from arguing that defendant abandoned the bag *and* that he exercised dominion or control over the bag. There was evidence presented that supporting a finding that defendant took either of these actions at different moments during the relevant time period. The constructive possession instruction was supported by the evidence, and the court finds that defendant is not entitled to a new trial.

**IT IS THEREFORE ORDERED** that defendant's Motion for a Judgment of Acquittal and/or Motion for a New Trial (Doc. 77) is denied.

Dated this 18th day of October, 2012, at Kansas City, Kansas.

                                          s/ Carlos Murguia
                                          **CARLOS MURGUIA**
                                          **United States District Judge**